**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| Livingston Parish School Board, | |
| Plaintiff, | CIVIL ACTION No. 23-cv-00807-BAJ-RLB |
| v. | JUDGE: Brian A. Jackson |
| Meta Platforms, Inc., Instagram, LLC, ByteDance, Inc., TikTok, Inc., Charter Communications, Inc., Charter Communications, LLC, Cox Communications, Inc., and Cox Communications Louisiana, LLC | MAG. JUDGE: Richard L. Bourgeois, Jr. |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ISP DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND..................................................... 3

LEGAL STANDARD........................................................................................... 5

ARGUMENT ..................................................................................................... 6

I.     SECTION 230 SHIELDS THE ISP DEFENDANTS FROM LIABILITY BASED
       ON THEIR PROVISION OF ACCESS TO INSTAGRAM AND TIKTOK.................... 6

       A.     Section 230 Confers Broad Immunity on ISPs for Precisely the Type of
              Claims Plaintiff Asserts Here................................................................. 6

       B.     The Claims Against the ISP Defendants Are Barred by Section 230(c) ............... 8

              1.     The ISP Defendants Are Providers of "Interactive Computer
                     Services" ................................................................................. 8

              2.     The Claims Are Based on Third-Party Content........................................... 9

              3.     The Claims Treat the ISP Defendants as Publishers................................. 10

II.    SEVERAL ADDITIONAL GROUNDS WARRANT DISMISSAL OF
       PLAINTIFF'S EQUITABLE ESTOPPEL CLAIM ...................................... 12

CONCLUSION.................................................................................................. 14

<u>**TABLE OF AUTHORITIES**</u>

**Pages**

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 5, 13

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ............................................................................................ 11

*Ben Ezra, Weinstein, and Company, Inc. v. America Online Inc.*,
   206 F.3d 980 (10th Cir. 2000) ............................................................................................. 9

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
   632 F.3d 148 (5th Cir. 2010) ............................................................................................. 13

*Doe through Next Friend Roe v. Snap, Inc.*,
   No. 22-cv-00590, 2022 WL 2528615 (S.D. Tex. July 7, 2022) ............................................. 10

*Doe Through Roe v. Snap, Incorporated*,
   No. 22-20543, 2023 WL 4174061 (5th Cir. June 26, 2023) .................................................. 10

*Doe v. Myspace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ...................................................................................... passim

*Green v. Am. Online*,
   318 F.3d 465 (3d Cir. 2003) .............................................................................................. 11

*Hinton v. Amazon.com.dedc, LLC*,
   72 F. Supp. 3d 685 (S.D. Miss. 2014) ................................................................................. 5

*In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*,
   No. 4:22-md-03047, Dkt. 138 (N.D. Cal., *filed* Feb. 17, 2023) ............................................ 1, 3

*La'Tiejira v. Facebook, Inc.*,
   272 F. Supp. 3d 981 (S.D. Tex. 2017) ............................................................................ 10, 11

*Lewis v. United States*,
   483 F. Supp. 3d 382 (M.D. La. 2018) ................................................................................. 12

*Mozilla Corp. v. FCC*,
   940 F.3d 1 (D.C. Cir. 2019) ............................................................................................... 12

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ............................................................................................... 5

*Shuler v. Duke*,
    No. 16-cv-0501, 2018 WL 2445685 (N.D. Ala. May 31, 2018) ............................................. 5

*Stratton Oakmont v. Prodigy Services Co.*,
    1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) (unpublished) ............................................. 6

*Taylor v. Books A Million, Inc.*,
    296 F.3d 376 (5th Cir. 2002) ............................................. 5

*Wells v. Youtube*,
    LLC, No. 20-cv-2849, 2021 WL 2652966 (N.D. Tex. May 17, 2021) ............................... 8, 9

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ............................................. 6, 7, 9

## STATUTES

28 U.S.C. § 1332 ............................................. 3

47 U.S.C. § 230 ............................................. passim

Louisiana Civil Code Article 2315 ............................................. 4, 5

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................. 5

## OTHER AUTHORITIES

H.R. Conf. Rep. 104-458 (1996) ............................................. 6, 7

*In re Restoring Internet Freedom*,
    33 FCC Rcd. 311 (2018) ............................................. 11

Defendants Charter Communications, Inc., Charter Communications, LLC (together, "Charter"), Cox Communications, Inc., and Cox Communications Louisiana, LLC (together, "Cox" and, with Charter, the "ISP Defendants") submit this memorandum of law in support of their Motion to Dismiss Counts Four and Five of the Petition for Damages and Injunctive Relief. *See* Dkt. 3-2 ("Pet.").

## PRELIMINARY STATEMENT

The petition in this case mimics a series of recent lawsuits seeking to hold social media platforms liable for harms allegedly caused by "addictive" attributes of their services. Most of those lawsuits have been consolidated in a multi-district litigation pending in the Northern District of California. *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, No. 4:22-md-03047 (N.D. Cal.). The difference between this case and its predecessors, however, is that this Plaintiff also sued two Internet service providers ("ISPs"), Charter and Cox, on the ground that they "enabled children to access these platforms" over their "physical infrastructure in the State of Louisiana." Pet. ¶ 178. Plaintiff seeks an order requiring the ISP Defendants to block access to Instagram and TikTok on school property during school hours. *Id.* ¶ 265.

Plaintiff's attempt to hold the ISP Defendants liable for providing access to third-party content is flatly barred by Section 230 of the Communications Act of 1934 ("Section 230"), as amended by the Communications Decency Act of 1996 ("CDA"). *See* 47 U.S.C. § 230. Section 230 provides that an "interactive computer service" provider—a category that expressly includes ISPs—shall not be "treated as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1). Congress enacted this provision to prevent precisely the type of claim Plaintiff is asserting here—an attempt to hold ISPs responsible for third-party content they play no role in creating, moderating, or promoting. In Plaintiff's view, ISPs—

1

rather than parents—should be the arbiters of what websites young people visit, what videos they view, how long they interact with others online, etc. But Congress recognized that imposing a legal duty on ISPs to identify and block access to allegedly harmful Internet content under state tort law would be wholly unworkable. It instead established a national policy of "maximiz[ing] *user control* over what information is received by individuals, families, and schools who use the Internet," while promoting technologies that "*empower parents* to restrict their children's access to objectionable or inappropriate online material." *Id.* §§ 230(b)(3)-(4) (emphases added). As a result of Section 230's "broad immunity" for providers of interactive computer services, a party alleging harm from online content may pursue legal action against the individual or entity that "generated the content," but may not seek relief against Internet intermediaries that *provide access to* that content. *Doe v. Myspace, Inc.*, 528 F.3d 413, 418-19 (5th Cir. 2008). This foundational legal principle requires dismissal of both claims against the ISP Defendants (Counts Four and Five).

Independent of Section 230 immunity, Plaintiff's claim asserting "Equitable Estoppel" (Count Five) warrants dismissal for several additional reasons. There is no cause of action for equitable estoppel under Louisiana law, so the claim fails at the threshold. In any event, the petition is devoid of facts to support Plaintiff's conclusory assertions that the ISP Defendants "made representations . . . of *their* ability to protect minors from harm," or that Plaintiff relied on such representations. Pet. ¶¶ 267-68 (emphasis added). To the contrary, the statements attributed to the ISP Defendants that discuss social media platforms all consist of "suggestions for parents," including tools *parents* may use to block access to particular websites and services. *Id.* ¶¶ 181-83. The lack of any plausible factual basis for the estoppel claim provides a further basis for dismissal.

In short, Plaintiff's claims against the ISP Defendants are squarely foreclosed by federal law and absurd on their face. The Court should dismiss those claims with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Louisiana school board "charged with the responsibility to operate the Livingston Parish public school system." Pet. ¶ 16. On July 18, 2023, Plaintiff filed this action in the Twenty-First Judicial District Court for the Parish of Livingston against eight defendants: Meta Platforms, Inc. and Instagram, LLC (together, the "Instagram Defendants"), ByteDance, Inc. and TikTok Inc. (together, the "TikTok Defendants"), and the Charter and Cox entities. *Id.* ¶¶ 17–22.[1]

Plaintiff's lawsuit alleges that students in Louisiana are being harmed from their interactions with content on Instagram and TikTok. Pet. ¶ 12. The gravamen of the petition is that the Instagram and TikTok Defendants implement certain "design elements" to "make [these] platforms addictive to all users." *Id.* ¶ 5. Plaintiffs focus on three contested "design practices" that purportedly "manipulat[e]" users into developing addictions: (1) "endless scroll mechanisms," which Plaintiff refers to as "low-friction variable rewards," *see id.* ¶¶ 48–63; (2) "AutoPlay" mechanisms, which Plaintiff refers to as "navigation manipulation," *see id.* ¶¶ 64–67; and (3) a variety of features that Plaintiff describes as "social manipulation," including the practice of displaying the number of "views, likes, dislikes, or comments" for any single "piece of content," *see id.* ¶¶ 68–100.[2] Plaintiff argues these features are "purposely-addictive" and harm "children's

---

[1] Plaintiff alleged that two of the ISP Defendants—Charter Communications, LLC and Cox Communications Louisiana, LLC—were "domiciled in Louisiana." Pet. ¶¶ 21-22. On August 23, 2023, Defendants removed this action to this Court under 28 U.S.C. § 1332 on the ground that Charter Communications, LLC and Cox Communications Louisiana, LLC are not Louisiana residents for purposes of determining diversity jurisdiction. Dkt. 3 ¶¶ 14-20.

[2] These claims about social media design practices are virtually indistinguishable from the allegations at issue in the actions now consolidated in the multi-district litigation in the Northern District of California. *See* Plaintiffs' Master Complaint ¶ 3 *in In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, No. 4:22-md-03047, Dkt. 138 (N.D. Cal.,

health and safety," *id.* ¶ 107, and that they force Plaintiff to "divert[] resources from its core educational mission to address disciplinary and mental health issues," *id.* ¶ 187.  On that basis, Plaintiff brings a number of Louisiana tort claims against the Instagram and TikTok Defendants. *Id.* ¶¶ 189-245.

      Plaintiff does not allege that the ISP Defendants played any role in developing these allegedly "purposefully-addictive design features" of Instagram or TikTok.  Pet. ¶ 107.  Nor does Plaintiff allege that the ISP Defendants have implemented design features to make their own Internet access services addictive.  Instead, Plaintiff included the ISP Defendants in this lawsuit merely because they offer access to the Internet, which includes the social media platforms at issue, Pet. ¶ 178, and thereby allow students to be "deluged with exploitive and harmful content," *id.* ¶ 258.  Plaintiff further alleges that the ISP Defendants are "aware of the problems inherent in social media use among children," *id.* ¶ 184, citing portions of the their websites that provide advice on how "parents" can "[k]eep [their] [c]hildren [s]afe [o]nline" by using the "privacy settings" on certain social media sites or installing "parental controls" like "[w]eb-filtering software," *id.* ¶¶ 181–83.  Because the ISP Defendants themselves did not block students' access to Instagram and TikTok, Plaintiff asserts that they should be held responsible for harms allegedly caused by those social media platforms under Louisiana Civil Code Article 2315, *id.* ¶¶ 246–65 (Count Four), and "requests an order prospectively enjoining [the] ISP Defendants from allowing Internet-enabled devices to connect to the Instagram and TikTok Defendants' platforms, on Public School property, during school hours," *id.* ¶ 265.

---

*filed* Feb. 17, 2023) (alleging that Instagram and TikTok, along with Snap and Google, "exploit children" through "endless feed[s] to keep users scrolling," "'trophies' to reward extreme usage," and "metrics and graphics to exploit social comparison").  No ISP has been named in any complaint in that multi-district litigation.

Plaintiff also includes the ISP Defendants in Count Five of the petition, asserting "Equitable Estoppel," on the ground that they allegedly "made representations, by conduct or work [*sic*], of their ability to protect minors from harm" on which Plaintiff purportedly "relied" to its detriment. *Id.* ¶¶ 267–69.  This claim is based entirely on the "representations" described in paragraphs 180–184 of the petition, which (as noted above) cite certain pages of the ISP Defendants' websites that provide advice "for parents" on techniques they can use to address potentially "problematic Internet use" by minors. *Id.*; *see also id.* ¶¶ 180–84.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  This plausibility requirement requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

Statutory immunity under Section 230 may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and, if established, requires dismissal with prejudice. *Myspace*, 528 F.3d at 417–18 (affirming dismissal with prejudice on Section 230 grounds); *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 692 (S.D. Miss. 2014) (dismissing with prejudice because plaintiff "has presented no plausible basis for avoiding the CDA's immunity bar"); *Shuler v. Duke*, No. 16-cv-0501, 2018 WL 2445685, at *10 (N.D. Ala. May 31, 2018) (similar).  That is because Section 230 provides "immunity from suit rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254–55 (4th Cir. 2009) ("We thus aim to resolve the question of § 230 immunity at the earliest possible stage because that immunity protects [defendants] . . . from having to fight costly and protracted legal battles." (cleaned up)).

5

## ARGUMENT

The claims asserted against the ISP Defendants in Counts Four and Five are squarely barred by Section 230, a statute specifically intended to shield providers of "access to the Internet" from state tort claims based on the Internet content they make available to their customers.  47 U.S.C. §§ 230(c)(1), (f)(2).  Moreover, Plaintiff's so-called "Equitable Estoppel" claim (Count Five) fails to state a claim for several independent reasons.  The Court should dismiss the claims against the ISP Defendants with prejudice.

## I.    SECTION 230 SHIELDS THE ISP DEFENDANTS FROM LIABILITY BASED ON THEIR PROVISION OF ACCESS TO INSTAGRAM AND TIKTOK

### A.    Section 230 Confers Broad Immunity on ISPs for Precisely the Type of Claims Plaintiff Asserts Here

Section 230 provides "broad immunity . . . to [Internet] service providers for all claims stemming from their publication of information created by third parties."  *Myspace, Inc.*, 528 F.3d at 418.  Congress enacted the provision in response to a New York court decision holding an online service provider liable for defamatory comments posted to an online bulletin board by a user, on the ground that the service provider qualified as a "publisher"—and thus was responsible for the content under traditional defamation principles—because it attempted to filter content on its platform through an "automatic software screening program."  *Stratton Oakmont v. Prodigy Services Co*., 1995 WL 323710, at *4 (N.Y. Sup. Ct. May 24, 1995) (unpublished).  Congress was concerned that such vicarious liability would undermine the development of the Internet, because Internet service providers (a) could not engage in the sort of "pre-publication" review that traditional media outlets undertook given the large volumes of online information that were being posted by users in real time, and (b) should not be deterred from attempting to screen out objectionable material.  *See, e.g.*, H.R. Conf. Rep. 104-458 at 194 (1996); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) (Section 230 reflects Congress's recognition that "[i]t

would be impossible for service providers to screen each of their millions of postings for possible problems"). Congress accordingly enacted Section 230 to "overrule" *Stratton Oakmont* and any other similar holdings. H.R. Conf. Rep. 104-458 at 194; *Zeran*, 129 F.3d at 331.

Most relevant here, Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute further specifies that a provider or user of an interactive computer service shall not be held liable based on "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." *Id.* § 230(c)(2). And Congress preempted any "State or local law" that is "inconsistent" with any part of Section 230. *Id.* § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

These provisions reflect Congress's deliberate "policy choice [] not to . . . impos[e] tort liability on companies that serve as intermediaries for other parties' potentially injurious [content]." *Myspace*, 528 F.3d at 419 (citation omitted). Congress immunized such Internet intermediaries from tort liability in the hope that they would "develop[] . . . blocking and filtering technologies" to offer to users in the "free market," with the goal of "maximiz[ing] user control over what information is received by individuals, families, and schools who use the Internet." 47 U.S.C. § 230(b)(2)-(4) (emphasis added). Critically, rather than requiring Internet intermediaries to decide what potentially harmful third-party content should be blocked, Congress expected users—and, in the case of minors, parents—to make such choices. Therefore, far from imposing any sort of obligation to block any third-party content, Congress expressly protected interactive

computer service providers' discretion to engage in content-screening *or to decline to do so*, while mandating that they "notify [their] customer[s]" of the "parental control protections" that are "commercially available" to "assist the customer in limiting access to material that is harmful to minors." *Id.* § 230(d).[3]

As a result of this statutory immunity, a plaintiff cannot sue the provider of an interactive computer service based on harms allegedly caused by a third-party website. *Myspace*, 528 F.3d at 419. In attempting to do just that, Plaintiff inexplicably ignores this bedrock provision of Section 230.

### B.     The Claims Against the ISP Defendants Are Barred by Section 230(c)

A defendant is entitled to Section 230 immunity if (1) it is a "provider or user of an interactive computer service," (2) the claims asserted are "based on information provided by another information content provider," and (3) the asserted claims "treat the defendant as the publisher or speaker of that information." *Wells v. Youtube*, LLC, No. 20-cv-2849, 2021 WL 2652966, at *2 (N.D. Tex. May 17, 2021) (cleaned up). All three requirements are easily satisfied here.

#### 1.     The ISP Defendants Are Providers of "Interactive Computer Services"

The statute expressly defines "interactive computer service" to include any "service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). Plaintiff's claims against the ISP Defendants are based entirely on their provision of Internet access. *See* Pet. ¶¶ 21–22 (alleging that the ISP Defendants are "provider[s] of Internet and Cable services"); *id.* ¶ 178 (alleging that

---

[3] As Plaintiff admits, both Cox and Charter did so by, for example, providing "support page[s]" that provide "a host of suggestions for parents," including "recommend[ations] [to] us[e] blocking software." Pet. ¶¶ 180–84. Paradoxically, Plaintiff frames these statements as "representations" in support of its Equitable Estoppel claim. *Id.* ¶ 267; *but see infra* Section II, pp. 12-13.

the ISP Defendants "enable[] children to access these [social media] platforms" over their "physical infrastructure in the State of Louisiana"); *id.* ¶ 251 (alleging that the ISP Defendants should be held liable for "providing Internet access to . . . social media platforms"). Because the ISP Defendants "provide[] access to the Internet," 47 U.S.C. § 230(f)(2), they are unquestionably "provider[s] . . . of an interactive computer service," *id.* § 230(c); *see also, e.g.*, *Ben Ezra, Weinstein, and Company, Inc. v. America Online Inc.*, 206 F.3d 980, 983 (10th Cir. 2000) (AOL was an "interactive computer service" because it provides access to the Internet); *Zeran*, 129 F.3d at 328–29, 330 n.2 (same).

### 2.    The Claims Are Based on Third-Party Content

A defendant is eligible for Section 230 immunity if the claims are based on "information provided by another information content provider." 47 U.S.C. § 230(c). An "information content provider" means "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Therefore, the relevant question is whether the content giving rise to the plaintiff's claim was "provided by a third-party" or whether the defendant "actually create[ed] or develop[ed] any of the information" itself. *Wells*, 2021 WL 2652966, at *3 (citations omitted).

Here, Plaintiff's claims against the ISP Defendants are based entirely on the supposedly "exploitive and harmful content" available on Instagram and TikTok. Pet. ¶ 258. According to Plaintiff, that third-party content caused a "public health crisis" that, in turn, forced Plaintiff to "take steps to mitigate the harm and disruption" in its schools. Pet. ¶¶ 258, 263 (Count Four). By the same token, in support of its "Equitable Estoppel" claim, Plaintiff alleges that such third-party content renders the social media platforms "[un]suitable for minors". *Id.* ¶ 268 (Count Five).

Nothing in the petition alleges that either Charter or Cox was "responsible, in whole or in part, for the creation or development" of any content available on Instagram and TikTok. 47 U.S.C. § 230(f)(3). That means the "information" on which Plaintiff's claims are based necessarily was "provided by another information content provider." *Id.* § 230(c)(1). The failure to allege that the ISP Defendants created or transformed the Internet content at issue is fatal to their claims. *See, e.g.*, *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017) (dismissing claim with prejudice because plaintiff "fail[ed] to allege a single fact suggesting that the [] [d]efendants authored the [content at issue]").[4]

### 3. The Claims Treat the ISP Defendants as Publishers

Section 230 bars claims that seek to "treat[]" the defendant "as the publisher or speaker" of the third-party information at issue. 47 U.S.C. § 230(c)(1). When analyzing this requirement, "what matters is not the name of the cause of action," but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided

---

[4] That Plaintiff's "Equitable Estoppel" claim is based on supposed "representations" about the platforms' safety does not change the Section 230 analysis, because it is the allegedly "harmful" third-party content that (according to Plaintiff) renders those representations false. Pet. ¶¶ 258, 267. The plaintiff in *Doe through Next Friend Roe v. Snap, Inc.* made similar allegations, arguing that the defendant reneged on public statements regarding its efforts to "monitor content to prohibit bullying" and "protect its young users." *See* No. 22-cv-00590, 2022 WL 2528615, at *12 (S.D. Tex. July 7, 2022). That court found that plaintiff's claims were barred by Section 230 because they "seek to fault" the defendant "for information provided by a third party." *Id*. at *14 (cleaned up). The Fifth Circuit recently affirmed that ruling, confirming that Section 230 provides "broad" immunity to interactive computer service providers "for all claims stemming from their publication of information created by third parties." *Doe Through Roe v. Snap, Incorporated*, No. 22-20543, 2023 WL 4174061, at *1 (5th Cir. June 26, 2023). Moreover, the representations attributed to the ISP Defendants consist of statements made in compliance with their obligation under Section 230(d) to "notify [their] customer[s] that parental control protections" are available. 47 U.S.C. § 230(d); Pet. ¶¶ 180–84. That independently precludes liability, as statements made in compliance with Section 230's express command cannot constitute a violation of state law. *See* 47 U.S.C. § 230(e)(3) (expressly preempting inconsistent state laws). In all events, the Equitable Estoppel claim warrants dismissal independent of Section 230, as explained below. *See infra* Section II pp. 12-13.

by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009); *see also La'Tiejira*, 272 F. Supp. 3d at 993 (same). Any "activity that can be boiled down to deciding whether to exclude material that third parties seek to [disseminate] online is perforce immune under section 230." *La'Tiejira*, 272 F. Supp. 3d. at 993–94 (citation omitted). That includes "decisions relating to the monitoring, screening, and deletion of content from [a] network." *Myspace*, 528 F.3d at 420 (citation omitted). It also includes claims based on a defendant's alleged failure to "implement basic safety measures to protect minors" from harmful content. *Id.* at 419–20.

Here, both the fault and estoppel claims seek to impose liability on the ISP Defendants for providing access to content on Instagram and TikTok via the Internet and, in particular, based on their failure to "block[] children's access to the[] [social media] platforms" at issue by implementing safety measures like "firewalls, [] DNS filters, [or] deep packet inspection." Pet. ¶ 184. The Fifth Circuit considered similar claims in *Doe v. Myspace*, in which the plaintiff's claims were "predicated solely on MySpace's failure to implement basic safety measures to protect minors." 528 F.3d at 419. The court easily found that the claims, however framed, were "another way of claiming that MySpace was liable for publishing [] communications" and that each of the claims "speak to MySpace's role as a publisher of online third-party-generated content." *Id.* at 420. In so doing, the panel endorsed other appellate precedent establishing that attempts to "hold [an intermediary] liable" for "failing to address certain harmful content on [a] network" are barred by Section 230(c)(1). *See id.* (quoting *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003)).[5]

---

[5] Plaintiff points to the Federal Communications Commission's ("FCC") 2018 repeal of its "net neutrality" rule prohibiting blocking of Internet traffic in support of its argument that the ISP Defendants have a duty to block access to Instagram and TikTok. Pet. ¶ 179; *see also In re Restoring Internet Freedom*, 33 FCC Rcd. 311 (2018) ("2018 Order"). That is a red herring. The FCC by no means sought to encourage ISPs to block access to lawful traffic; to the contrary, the agency lifted the regulatory prohibition because it considered it "unnecessar[y]" in light of the established consensus that such conduct is inappropriate. 2018 Order ¶ 117. More broadly, the

Under *Myspace*, Plaintiff's claims necessarily seek to "treat[] [the ISP Defendants] as the publisher or speaker of" the allegedly harmful content available on Instagram and TikTok. 47 U.S.C. § 230(c)(1). And because the ISP Defendants are "provider[s] . . . of [] interactive computer service[s]," *supra* Section I.B.1., pp. 8-9, and are not alleged to be "responsible, in whole or in part, for the creation of development" of the content alleged to cause Plaintiff harm, *supra* Section I.B.2., pp. 9-10, Plaintiff's claims are barred by Section 230(c)(1).

## II.    SEVERAL ADDITIONAL GROUNDS WARRANT DISMISSAL OF PLAINTIFF'S EQUITABLE ESTOPPEL CLAIM

Plaintiff's "Equitable Estoppel" claim (Count Five) is based on its theory that the ISP Defendants "made representations" about "their ability to protect minors from harm" and the "suitab[ility]" of "the challenged social media platforms . . . for minors." Pet. ¶ 267. Plaintiff claims that it "justifiably relied on these representations" and "changed its position in light of that reliance, to its detriment." *Id.* ¶¶ 268–69.

Even apart from Section 230, Count Five fails to state a claim for several reasons. Most notably, "equitable estoppel is not, in itself, either a claim or defense," but is rather "a means of precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct." *Lewis v. United States*, 483 F. Supp. 3d 382, 395 (M.D. La. 2018). "[T]o the extent that [a] Complaint asserts equitable estoppel as a standalone claim," as Plaintiff's petition does here (in Count Five), "the claim must be dismissed." *Id.*

---

FCC's 2018 Order implemented a "market-based, 'light-touch' policy for governing the Internet," *Mozilla Corp. v. FCC*, 940 F.3d 1, 17 (D.C. Cir. 2019), consistent with the animating purpose of Section 230: that Internet services "should remain free of regulation." 2018 Order ¶ 203 (citations omitted) (discussing 47 U.S.C. § 230(b)). In all events, even if ISPs are *permitted* to block certain content (notwithstanding their public commitments not to do so, *see* 2018 Order ¶ 117), Section 230 precludes the imposition of any state-law *obligation* to do so.

In any event, the allegation that the ISP Defendants made representations regarding "their" ability to protect minors from harm is devoid of factual support and thus implausible. *See Iqbal*, 556 U.S. at 678. Plaintiff's reliance on the ISP Defendants' statements noted in paragraphs 180-84 of the petition undermines, rather than bolsters, its claim: The cited statements all identify resources for *parents* to protect their children from harm, rather than representing that the *ISPs* would assume responsibility for monitoring and ensuring the safety of children's interactions with social media content. *See* Pet. ¶ 181 (urging parents to consider using "parental control software" and to check their children's "privacy settings" on social media platforms, among other options); *id.* ¶ 182 (warning parents about "mental health issues . . . linked to the [Instagram] app"); *id.* ¶ 183 (noting that parents should consider using software to block access to social media sites). Nor does Plaintiff allege any specific facts to support its conclusory assertion that it "relied" on the ISP Defendants' purported representations, which provides an additional basis for dismissal. *See City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010) (dismissing claim because plaintiff "failed to show more than mere conclusory allegations of justifiable reliance").

\*   \*   \*

At bottom, Plaintiff's allegations confirm that the ISP Defendants are doing just what Congress envisioned and enshrined as national policy: they empower parents to use an array of tools to protect their children from potentially harmful Internet content. The Court should reject Plaintiff's ill-conceived invitation to supplant parental oversight with a regime in which ISPs decide what content is suitable for minors (and, by extension, adults), how much viewing is appropriate, and where content should be accessible. Such a nightmarish regime is flatly barred by Section 230, and Plaintiff's implausible allegations independently fail to state a claim.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss all claims against the ISP Defendants with prejudice.


Respectfully submitted this __1st__ day of __September__, 2023.

By: _/s/_ Martin E. Landreiu

Martin E. Landrieu (#18995)
Phillip J. Antis, Jr. (#29067)
GORDON, ARATA, MONTGOMERY, BARNETT,
MCCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Telephone: 504.582.1111
Facsimile: 504.582.1121
Email: mlandrieu@gamb.com
Email: pantis@gamb.com

_/s/_ Matthew A. Brill

Matthew A. Brill (*pro hac vice* pending),
*Lead Attorney*
Andrew D. Prins (*pro hac vice* pending)
Kiley S. Boland (*pro hac vice* pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200
Facsimile: 202.637.2201
Email: matthew.brill@lw.com
Email: andrew.prins@lw.com
Email: kiley.boland@lw.com

Luke A. Budiardjo (*pro hac vice* pending)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, N.Y. 10020
Telephone: 212.906.1200
Facsimile: 212.751.4864
Email: luke.budiardjo@lw.com

*Attorneys for ISP Defendants*

## <u>NOTICE REGARDING CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 5(e) as amended effective August 18, 2022, no certificate of service is required because this document was served by filing it with the court's electronic filing system and all parties are electronic filers and will receive notice through the court's electronic filing system.